In re the MARRIAGE OF Mary McCarthy LeBLANC, Appellant and Cross–Appellee,

**and**

Richard John LeBlanc, Appellee and Cross–Appellant.

No. 89CA1119.

Colorado Court of Appeals, Div. V.

Oct. 25, 1990.

Lawrence Litvak, P.C., Ronald D. Litvak, Denver, for appellant and cross-appellee.

McGuane and Malone, Thomas P. Malone, Denver, for appellee and cross-appellant.

Opinion by Judge PLANK.

In this dissolution of marriage proceeding, Mary McCarthy LeBlanc, wife, and Richard John LeBlanc, husband, appeal certain orders entered regarding child support and maintenance. We affirm in part and reverse in part.

As part of its permanent orders, the trial court in 1984 ordered the husband to pay the college expenses for the oldest child, Michelle, to a maximum of $6,000 per year including tuition, books, fees, room and board, and other purely educational costs "while the child is attending college." The court stated that it would not enter orders for the higher educational costs of the children other than Michelle since it was unknown at that time what, if any, education would be appropriate for them.

In a previous appeal, *see In re Marriage of LeBlanc*, (Colo.App. No. 84CA0894, September 5, 1985) (not selected for publication), husband asserted in pertinent part, that the trial court had abused its discre-

tion in its award of child support and college expenses because it did not consider the relative incomes of the parties and because, in complying with the court's order, husband would not have sufficient funds to provide for his own needs. There, we affirmed the judgment of the trial court.

In 1987, both parties sought post-decree orders regarding husband's duty to provide child support and contribute toward Michelle's college education upon her attainment of 21 prior to graduation. The trial court determined that the holding of *In re Marriage of Plummer*, 735 P.2d 165 (Colo. 1987) did not apply to this case and also found that there was a presumption that the dissolution court had considered the statutory factors when it entered its permanent orders. Therefore, the court concluded that Michelle was not emancipated and that support and college assistance should continue for her beyond the age of 21. The father attempted to appeal the order but we dismissed the appeal since it was not a final judgment.

Later, in 1989, the trial court entered further orders increasing child support, reducing maintenance, and determining the college educational expenses for the parties' remaining children who might elect to attend college. As to the two daughters who were expected to attend college, the court provided that the court-ordered child support, college expenses, and medical expenses would terminate upon the age of 21.

### I.

First, husband appeals the trial court's 1987 child support order and wife appeals the 1989 order regarding the duty of support beyond age 21. We affirm both orders.

### A.

█ Relying on *In re Marriage of Plummer, supra,* husband asserts that the court erred in obligating him to pay child support and college expenses for Michelle after she reached the age of 21.

Here, unlike the situation in *Plummer*, the final decree of dissolution expressly provided for the continuation of father's duty to pay support while Michelle attended college. Although husband timely appealed the permanent orders on various issues including child support, he did not assert error as to that extended support obligation. Therefore, even if the original support order could be considered erroneous, it is dispositive on this issue. See *In re Marriage of Channell*, 797 P.2d 819 (Colo.App.1990). Thus, the court's 1987 order properly upheld husband's obligation under the permanent orders to provide Michelle with support beyond the age of 21.

### B.

As to the 1989 order, wife asserts that the court erred in entering an order which, although applying to other children of the marriage, directly conflicted with the 1987 order entered by a different judge. She also maintains that the court failed properly to interpret *In re Marriage of Plummer, supra.* In this regard, she argues that *Plummer* is distinguishable from the facts of this case because the order for college support here was entered before the younger two daughters turned 21. In like manner, she argues that nothing in the case of *In re Marriage of Pring*, 742 P.2d 343 (Colo.App.1987) states that a court is barred from making orders, when the child is under 21, for payment of college expenses to continue beyond the age of 21. We disagree.

█ By footnote, the court in *Plummer, supra,* recognized "that parties may agree to post-emancipation support, or that a court may require such support *in proper circumstances.*" (emphasis added) However, we conclude that, under *Plummer*, the "proper circumstances" which may justify *any* decree continuing support beyond the presumed age of emancipation are limited to unusual situations such as where a child is disabled, as in *Koltay v. Koltay*, 667 P.2d 1374 (Colo.1983). However, a child who may voluntarily elect to attend college after reaching the age of majority is not under such a disability. *See In re Marriage of Pring, supra.* Therefore, the

trial court's 1989 order is in conformity with our interpretation of *Plummer*.

## II.

Wife also contends that the trial court erred in reducing maintenance from $2,200 per month to $1,000 per month and terminating such payments upon her death or remarriage, or the death of husband. She argues that the trial court failed to recognize that maintenance was awarded to her as part of the property division, and also maintains that the court applied the wrong standards in modifying the award. We agree in part.

■ The characterization of periodic payments as maintenance on the one hand, or property division on the other, should be based on the purpose of the payments as determined by the totality of the circumstances. *In re Marriage of Sinn*, 696 P.2d 333 (Colo.1985).

■ Here, the court did not analyze the wife's periodic payments as property or maintenance. Nor was this issue resolved in the prior appeal. However, even if we assume, without deciding, that the support payments to wife here constituted pure maintenance, and were therefore subject to modification, we conclude that the court erred in applying § 14–10–122, C.R.S. (1987 Repl.Vol. 6B).

The determination, under § 14–10–122, whether a change of circumstances is so substantial and continuing that modification of maintenance is appropriate requires examination of all relevant circumstances of both parties. *In re Marriage of Udis*, 780 P.2d 499 (Colo.1989). One who seeks to modify a decree has a heavy burden, and the issue is not whether, based on the current financial circumstances of the parties, the court would have awarded the same amount of support as incorporated in the original decree. *In re Marriage of Anderson*, 638 P.2d 826 (Colo.App.1981).

■ The fact that a spouse who receives maintenance enjoys increased income in comparison to the amount of income earned by that spouse at the time the decree was entered does not necessarily require the conclusion that the initial award of maintenance has been rendered unconscionable. *In re Marriage of Udis, supra*. Moreover, the extent to which an amount for child support is received by the custodian is a relevant factor in determining the amount and duration of maintenance. *In re Marriage of Micaletti*, 796 P.2d 54 (Colo.App. 1990).

Here, in modifying maintenance, it is apparent that the trial court impermissibly relied on wife's income having increased threefold since the time of dissolution. It recognized that wife still earned a "very modest sum" in comparison to her husband, who continued to make a very substantial living as an airline pilot. However, it concluded that the purpose of maintenance is not to ensure that the parties have an equal lifestyle forever. While this statement is true, *see Moss v. Moss*, 190 Colo. 491, 549 P.2d 404 (1976), nevertheless, the court must consider the "reasonable needs" of a spouse, which depend on the particular facts and circumstances of the parties' marriage. *See In re Marriage of Olar*, 747 P.2d 676 (Colo.1987).

In addition, it appears that the court was convinced that the award of maintenance was made primarily to enable wife to obtain further education. It concluded that the statute is not designed to allow wife to continue to educate herself in perpetuity and that wife could have completed her education in the five years since the dissolution. However, the extensive findings in the decree of dissolution do not support the conclusion that wife's maintenance was for this singular purpose; and therefore, we conclude that the reduction of maintenance is not supported by the court's remarks regarding wife's attempts to further her education.

Finally, the evidence showed that the present value of both husband's fixed benefit and directed benefit pension plans had increased substantially since the time of decree, and would continue to do so until such time as husband would be required to retire. However, the court made no findings as to how this evidence influenced its decision. Therefore, we conclude that the

order decreasing maintenance is not supported by sufficient findings. *See In re Marriage of Thompson,* 706 P.2d 428 (Colo.App.1985). Hence, we remand for a further determination of this issue on the record, and entry of the requisite findings regarding the nature of the award as maintenance or property and reflecting consideration of the factors in § 14–10–114(2), C.R.S. (1987 Repl.Vol. 6B). *See In re Marriage of Sinn, supra.*

### III.

Finally, wife maintains that the trial court erred in refusing to exercise its discretion to award child support in an amount exceeding the uppermost limits indicated in the child support guidelines. It will be necessary for the child support obligation to be recalculated on remand based on our reversal of the maintenance award; therefore, we address this issue since it may again arise after remand.

█ In cases where the combined gross income of the parties exceeds the highest combined gross income level, as set out in the guidelines, there is a rebuttable presumption that the basic child support obligation at the uppermost level of the guideline is the *minimum* presumptive amount of support. *In re Marriage of Van Inwegen,* 757 P.2d 1118 (Colo.App.1988).

█ Child support is determined on a case-by-case basis, and in exercising its discretion, the trial court must consider the relevant factors of § 14–10–115(1), C.R.S. (1987 Repl.Vol. 6B). *In re Marriage of Van Inwegen, supra.* In attempting to translate, to the extent possible under the evidence, a higher standard of living and additional needs of a child into specific monetary requirements, a court should look at, among other items, the costs of food, shelter, education, and recreational costs at the level enjoyed before the dissolution or as near to that level as possible. *In re Marriage of Schwaab,* 794 P.2d 1112 (Colo.App.1990).

█ Here, the trial court found that husband's income was $10,000 per month and that wife's income was $1,800 per month plus whatever maintenance she received. Yet, without making any further specific findings, it mechanically apportioned the minimum presumptive amount of support for three children pro rata between the parties. Therefore, the court erred in failing to consider the mandatory factors of § 14–10–115(1), and this matter must be remanded for the court to adopt, based on the existing record and its award of maintenance, further findings regarding the standard of living and the financial needs of the children and to amend its order consistent with the views expressed herein.

### IV.

█ Finally, we reject husband's contention that he was denied due process because the court directed counsel to prepare the written orders.

The rules of civil procedure should be construed in harmony whenever possible. *In re Marriage of Forsberg,* 783 P.2d 283 (Colo.1989). C.R.C.P. 58(a), as now in effect, requires all trial orders or judgments to be in writing. *In re Marriage of Hoffner,* 778 P.2d 702 (Colo.App.1989). C.R.C.P. 121 § 1–16 is consistent with this requirement. Recognizing the problem of post-trial delay at the trial level, it allows the court to direct counsel to prepare the written form of an order. *See Uptime Corp. v. Colorado Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966).

Due process requires notice and the opportunity to be heard. *People in Interest of D.G.,* 733 P.2d 1199 (Colo.1987). Once an order is prepared by counsel, the other party has 15 days to file objections and suggested modifications to the proposed form of order. Therefore, C.R.C.P. 121 § 1–16 comports with due process.

### V.

We have reviewed the other contentions of error and determine that they are without merit. Furthermore, husband's argument relating to the November 20, 1984, order clarifying that the payment of premajority college expenses was to be on a

monthly basis, is barred by the doctrine of res judicata. *See Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973).

The portions of the 1989 order decreasing maintenance and establishing child support according to the guidelines are reversed, and the cause is remanded to the trial court for further proceedings and a new order in accordance with the views expressed in this opinion. Nevertheless, the trial court's 1989 order for child support and maintenance shall remain in effect, with adjustments to be made, if appropriate, effective February 1, 1989.

In all other respects, the orders are affirmed.

CRISWELL and REED, JJ., concur.