STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

}
In re Sheffield Wind Project                       }
  Amended Individual Stormwater Permit    }          Docket No. 252-10-08 Vtec
    (No. 5535-INDC.A)               }
    (Appeal of Brouha et al.)        }
}

Decision and Order on Motion to Alter

Appellants Carol Brouha, Paul Brouha, Greg Bryant, Don Gregory, the King George School, Linda Lavalle, Robert Tuthill, and David Zimmerman appealed from a decision of the Vermont Agency of Natural Resources (ANR) issuing individual stormwater discharge permit No. 5535-INDC, covering the construction of the Sheffield Wind Project (the Project), and appealed from the amended individual stormwater discharge permit (No. 5535-INDC.A) for the same project.[1] The parties agreed that the amended permit superseded the original one, and the appeal of the amended permit was incorporated into the ongoing case.

Appellants are represented by Stephanie J. Kaplan, Esq., and Jared M. Margolis, Esq.; Appellee-Applicants Signal Wind Energy, LLC and Vermont Wind, LLC (referred to in the singular as "Vermont Wind" or "First Wind") are represented by Ronald A. Shems, Esq., Andrew N. Raubvogel, Esq., Geoffrey H. Hand, Esq., and Elizabeth H. Catlin, Esq. The Vermont Agency of Natural Resources (ANR) is represented by Judith L. Dillon, Esq.

The Court issued a decision on August 26, 2010, approving an amended

---

[1] The project holds other permits and approvals from the Public Service Board and the Vermont Agency of Natural Resources (ANR) that were not appealed, including the ANR's approval of the project's operational stormwater discharge management system.

1

individual construction stormwater discharge permit covering the period during construction of the Project. Appellants moved to alter the Court's decision under V.R.C.P. 59(e), asking the Court to correct what they characterize as six errors in the Court's decision. Appellants also later filed an emergency motion to stay the operation of the permit pending appeal, which was fully briefed as of November 8, 2010 and which the Court addressed and denied in a written decision dated November 19, 2010.

Standard Applicable to a Motion to Alter or Amend a Judgment

Vermont Rule of Civil Procedure 59(e), which is substantially identical to Federal Rule 59(e), "gives the court broad power to alter or amend a judgment on motion within ten days after entry thereof." Drumheller v. Drumheller, 2009 VT 23, ¶ 28 (citing V.R.C.P. 59, Reporter's Notes). Rule 59(e) is a codification of the trial court's "inherent power to open and correct, modify, or vacate its judgments." Id. (citing West v. West, 131 Vt. 621, 623 (1973)). Although there is no explicit authorization in the rules of civil or appellate procedure, or in the rules specific to this Court, for a motion to "reconsider" a final decision, such motions are also treated as motions to amend or alter a judgment under V.R.C.P. 59(e). Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 6, 2007) (Wright, J.).

A Rule 59(e) motion "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588 (1996) (citing In re Kostenblatt, 161 Vt. 292, 302 (1994)). More specifically, the limited functions of a motion to alter or amend a judgment are "to correct manifest errors of law or fact on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an

2

intervening change in the controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.0 (2d ed. 1995)); see also Appeal of Van Nostrand, Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 11, 2006) (Durkin, J.). On the other hand, Rule 59(e) should not be used to "relitigate old matters" or "raise arguments or present evidence that could have been raised prior to entry of the judgment." Van Nostrand, Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 4.

Appellants' Motion to Alter

Appellants ask the Court to address the following six issues in the Court's decision and to alter that decision accordingly on each of the issues.

The finding that 65.6 acres of the 83.2 acres located within the flagged limits of construction will be disturbed during construction

The Court found that 83.2 acres of the project property will lie within the flagged limits of construction, but that, within the flagged limits of construction, approximately 65.6 acres of the project property is actually proposed to be disturbed during construction of the project. In re Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 4 (Vt. Envtl. Ct Aug, 26 2010) (Wright, J.). Applicants argue that because there is no clear delineation in the project plans indicating where within the 83.2 acres of the flagged limits of construction earth will be disturbed, the Court should find that the area to be disturbed is instead 83.2 acres. Motion to Alter at 3. Appellants then argue that, because the 83.2 acre area is significantly larger than the 60.5 acres that Applicants initially proposed to disturb, the Court should find that the Best Management Practices (BMPs) proposed to be employed are insufficient to protect water quality, and should instead deny the permit. Id. at 3–4.

3

As noted in the decision on the merits, the burden of overcoming the presumption of compliance with the Vermont Water Quality Standards (VWQS) lies with the Appellants. Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 19. In its decision, the Court determined that the Appellants failed to present evidence sufficient to overcome the presumption that the BMPs, if properly employed, will cause the project to comply with the VWQS. Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 18-19.

Appellants' Motion to Alter fails to present the Court with any additional evidence or to point out any overlooked provisions of law that might change this conclusion. The Court has reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.

The conclusion that Exhibit 2a is merely a different graphic representation of information that was already in the application materials

During trial, the Court denied Appellants' motion to add issues to their Statement of Questions regarding the set of plans in evidence as Exhibit 2a, ruling that all the information needed to prepare Exhibit 2a was contained in the application materials, the Permit and the EPSC Plan, although the Court recognized that the references to the plans produced for the operational stormwater permit were not as clear as they could have been. Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 22. Appellants argue that the Court erred in finding that Exhibit 2a presents the information that was already contained in Exhibits 1 and 2 in a different graphical depiction. Appellants argue that based on this error, the presumption that the BMPs will be sufficient to protect water quality on the site is unfounded and the permit should therefore be denied.

However, the Appellants have not provided any additional evidence to demonstrate that the Court's conclusion that regardless of any inconsistencies

4

between Exhibits 2 and 2a, the BMPs contained in the final EPSC Plan will result in the Project's compliance with the Vermont Water Quality Standards. Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 23.

Appellants' Motion to Alter fails to present the Court with any additional evidence or to point out any overlooked provisions of law that might change this conclusion. The Court has reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.

## The determination that Part 3 of the Standards and Specifications provides guidance but contains no mandatory provisions applicable to individual construction stormwater permits

Appellants argue that the Court failed to consider sediment control measures listed in Part 3 of the Vermont Standards and Specifications for Erosion Control and Sediment Prevention (Vermont Standards and Specifications) that, they argue, were omitted from the Project's EPSC Plan. Motion to Alter at 7. Appellants argue, as they did in their post-trial memoranda, that because the plans do not "comply with" the Part 3 provisions, the permit must be denied.

The Court explained that Parts 4 and 5 of the Vermont Standards and Specifications provide the BMPs applicable to individual stormwater permits. Part 3 of the Standards and Specifications provides guidance for preparing EPSC plans, and the requirements in § 3.3 are only mandatory for projects subject to the Construction General Permit, unlike projects, such as the present one, that must have an individual construction permit individually approved. Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 20, n.13. The Project at issue in this case is subject to an individual construction stormwater permit, and therefore the provisions of § 3.3 are not mandatory.

5

Appellants' Motion to Alter fails to present the Court with any additional evidence or to point out any overlooked provisions of law that might change this conclusion. The Court has reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.

The characterization of the project as linear

Appellants argue that the Court incorrectly characterized the project as linear instead of as a large contiguous area similar to a subdivision. Motion to Alter at 7-8. Based on their incorrect assumption that the requirements in Part 3 of the Vermont Standards and Specifications are mandatory for projects subject to individual construction stormwater permits, Appellants argue that the project is not linear, that Part 3 the Vermont Standards and Specifications requires separate pre- and post-construction EPSC plans for non-linear projects, and therefore the permit should be denied. Motion to Alter at 8.

Because Part 3 of the Vermont Standards and Specifications are not mandatory for the individually tailored EPSC Plan for construction of this project, the Court's characterization of the project as linear is simply descriptive rather than regulatory. The Court characterized the project as linear because "areas that are worked on earlier are completed and stabilized as new areas are opened up," Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 5, consistent with the description in § 3.6 of the Vermont Standards and Specifications of a linear project as one that lacks significant disturbance areas outside of the linear construction, as is the case with the proposed project, rather than a project where a large contiguous area of disturbance is proposed.

To the extent that it makes any difference to the outcome, Appellants have not presented the Court with any new or additional evidence in support of their argument that the project should not be characterized as linear. The Court has

6

reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.

<u>The conclusion that the logging and clearing on the project property are subject to the ANR's Acceptable Management Practices for Maintaining Water Quality on Logging Jobs in Vermont rather than to the Vermont Standards and Specifications</u>

The Court concluded that logging and clearing of vegetation, up to but not including the digging up of stumps, is covered by the Acceptable Management Practices for Maintaining Water Quality on Logging Jobs in Vermont (AMPs), and not by the Vermont Standards and Specifications for Erosion Prevention and Sediment Control. <u>Sheffield Wind Project</u>, No. 252-10-08 Vtec, slip op. at 7. Appellants argue that the heavy machinery used for logging to prepare the site for construction will disturb the surface of the soil, and that the NPDES stormwater program and the Vermont Standards and Specifications should apply to the logging as well as the construction of the project. Motion to Alter at 9.

However, regardless of the policy considerations regarding logging machinery, the Court is constrained to apply the statutes and regulations adopted by the legislature and the ANR, respectively, making logging subject to the AMPs, although earth disturbance due to the grubbing up of stumps and roots is considered earth disturbance subject to the Vermont Standard and Specifications. The Court's decision specifically addresses this issue of earth disturbance through the imposition of conditions 2 and 3, which require Applicants to install required sediment control devices before any disturbance of earth within the project area. <u>Sheffield Wind Project</u>, No. 252-10-08 Vtec, slip op. at 26.

Appellant also argues that the Court should have analogized the logging operation at the site to clearing land in preparation for construction under Act 250. Motion to Alter at 9–10. There is no question that the clearing of land for a project

7

within the jurisdiction of Act 250 is considered the commencement of construction, so that an application must be reviewed for compliance with Act 250 as the project property existed before any pre-application clearing or excavation in preparation for construction. See In re: Bernard and Suzanne Carrier, No. 7R0639-EB, Findings of Fact, Conclusions of Law and Order at 10 (Vt. Envtl. Bd. Oct. 5, 1990); see also In re: Sherman Hollow, Inc., No. 4C0422-5-EB, Findings of Fact, Conclusions of Law and Order at 11–12 (Revised) (Vt. Envtl. Bd. Feb. 17, 1989) (clearing and grubbing of the site necessary for construction constitutes development under Act 250); In re: J.P. Carrara and Sons, Inc., No. 1R0589-EB, Findings of Fact, Conclusions of Law, and Order at 9 (Vt. Envtl. Bd. Feb. 17, 1988) (logging activities in preparation for development are the commencement of construction).

However, the fact that logging constitutes the commencement of construction under Act 250 does not change the statute applicable to the present case, providing that "[s]tormwater runoff from silvicultural activities subject to accepted management practices adopted by the commissioner of forests, parks, and recreation" does not require a stormwater permit. 10 V.S.A. 1264(e)(2)(C).

Appellants' Motion to Alter fails to present the Court with any additional evidence or to point out any overlooked provisions of law that might change this conclusion. The Court has reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.


The imposition of a seven-acre limit on concurrent disturbance and requirement of prompt stabilization of soils within 14 days

In its decision, the Court determined that Appellants' proposed condition limiting concurrent soil disturbances to two acres and requiring stabilization within seven days was unnecessary to achieve compliance with the Vermont Water Quality Standards. Appellants argue that the characteristics of the project site make it a high

8

risk site, and that the Court should have imposed Appellants' proposed condition instead of the seven-acre limit on concurrent soil disturbance and requiring prompt stabilization of disturbed soil within 14 days.

The Court's decision analyzed the specific stabilization requirements of the EPSC Plan, and concluded on the balance of the evidence that the 7-acre disturbed area, 14-day stabilization limits, together with the specific stabilization required for various specific features of the project, represented "an appropriate balance between progressing with construction and managing areas of disturbed earth to prevent erosion and control the transport of sediment." Sheffield Wind Project, No. 252-10-08 Vtec, slip op. at 21–22. The fact that it met the characteristics of a high risk site are what caused it to require an individual stormwater permit in the first place, rather than being covered by the construction general permit under the ANR's stormwater permitting program.

Appellants failed to show at trial that the proposed additional restrictions were necessary to achieve compliance with the VWQS. Appellants' Motion to Alter fails to present the Court with any additional evidence or to point out any overlooked provisions of law that might change this conclusion. The Court has reviewed the evidence and its notes as to the testimony at trial, and declines to alter its decision on this issue.


Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion to Alter or Amend the Judgment is DENIED.

Done at Berlin, Vermont, this 6th day of January, 2011.


_____
Merideth Wright
Environmental Judge

9